UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CIVIL DIVISION

GRIGSBY & ASSOCIATES, INC., and
CALVIN B. GRIGSBY,

    Plaintiffs,

v.                                                          CASE NO.  06-23035-CIV-COOKE

M. SECURITIES INVESTMENT, HOWARD
GARY & COMPANY, HOWARD V. GARY
and the NATIONAL ASSOCIATION OF
SECURITIES DEALERS, INC.,

    Defendants.
_____/

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO AMEND FINDINGS AND JUDGMENT UNDER RULE 52b, 59b and RELIEF UNDER RULE 60b

As stated in *Kidd v. Equitable Life Assur. Soc'y of the U.S.*, 32 F.3d 516, 519 (11th Cir. 1994), members and persons associated with members must arbitrate claims arising out of the business of the member.  Grigsby & Associates was not in the swap business.  Defendants claims for swap profits was not arbitrable against Grigsby & Associates and more than a claim for unpaid rent would be arbitrable.  FINRA's authority to regulate broker dealers and their associated persons flows from Section 15d of the 1934 Securities Act.  Only those claims arising out of the business of Grigsby & Associates relating to the municipal bond transaction is arbitrable.  As stated in *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), the Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like

1

defense to arbitrability. However, the swap profits sought by defendants depended on a totally separate agreement with Miami Dade County than the bond transaction. As set forth on page 7 of the Motion the swap profits claimed by defendants were from a "CONTEMPORANEOUS SWAP OF FIXED TO FLOATING RATES PURSUANT TO THE SWAP AGREEMENT" with GBR not Grigsby & Associates. Defendants sued GBR and dismissed their claim for the swap profits with prejudice. What if Grigsby & Associates was also a limited partner in a real estate firm that sold some property to Dade County in 1996. Could another broker dealer claiming they had an interest in the sales proceeds from the real estate file a FINRA arbitration against Grigsby & Associates? What about a firm selling Grigsby a copier? Could Calvin Grigsby's wife file a divorce action in arbitration because Mr. Grigsby is an associated person? Clearly the claim in FINRA arbitration must be filed in connection with the brokerage business of the firm that is regulated by FINRA. FINRA has no regulatory authority over arbitration of divorces or interest rate swaps.

  Defendants claim after they have dismissed claims for swap profits against GBR that they have a claim for the same profits from Grigsby does not get around the bar of the res judicata against the swap profit contract claim resulting from the unequivocal dismissal with prejudice. Defendants cannot establish an agreement to arbitrate claims for swap profits dismissed against GBR with prejudice by simply now alleging that Grigsby is the liable party, without differentiating between the various entities, just because Grigsby has agreed to FINRA arbitration and GBR did not. This makes a mockery of the federal preference to support arbitration if after dismissing a claim in court the same claim can be resurfaced because of the federal policy supporting arbitration. A dismissal with prejudice is a judgment on the merits and final. As is clear from the discussion in the Motion, that the swap profits sought by

2

defendants were owned by an entity for which claims were dismissed with prejudice, which had no arbitration agreement with defendants, bears on the outcome of this motion.

As the Supreme Court ruled in First Options v. Kaplan, 514 U.S. 938, whether a party agreed to submit the arbitrability issue to the arbitrator or the courts should be determined by the courts on under state law.  "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts" (at 945)  the Court further stated: "This Court, however, has (as we just said) added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability:  Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so AT&T Technologies, supra, at 649; see  Warrior & Gulf, supra, at 583, n. 7. In this manner the law treats silence or ambiguity about the question "who (primarily) should decide arbitrability" differently from the way it treats silence or ambiguity about the question "whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement" -- for in respect to this latter question the law reverses the presumption. See  Mitsubishi Motors, supra, at 626 ("'Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'") (quoting  Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S.Ct. 927 (1983));  Warrior & Gulf, supra, at 582-583.

It is obvious that the swap was a part of the business of GBR, the Swap company, and not Grigsby & Associates, the bond underwriter.  The FINRA arbitration agreement was for disputes arising out of the business of bond underwriting and there is no basis to assume Grigsby & Associates contemplated that its proceeds from derivative lawsuit as a limited

3

partner, where limited partners have no power to manage the swap business, was subject to FINRA arbitration especially when defendants who brought the arbitration had already dismissed claims (which defendants claimed in their several complaints arose in 1996) against the swap profits with prejudice against the obligated party GBR.

Each of the cases cited by today's order presents a different set of facts from the present claims of defendants under two separate transactions. The reliance of the Order on the Supreme Court's Howsam case is misplaced. In Howsam v. Dean Witter Reynolds, 537 U.S. 79, 123 S.Ct. 588 (2002), the Court was asked to rule whether the judiciary or the arbitrators should interpret an internal NASD rule requiring commencement of arbitration within 6 years. Howsam did not turn on the question of the application of the defense of statute of limitations as the order suggests. The Howsam decision is very clearly limited to the application by the NASD of its own internal time limit rule. The Supreme Court clearly recognized this distinction. Justice Breyer stated: "[w]e find that the applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not the judge. The NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and apply it." 537 U.S. 79, 85. The Howsam does not stand for the proposition that the Court should not decide the state law stature of limitations defense, especially where, as here, the parties clearly intended for the Court to apply California Law under the AAU related to the bond transaction or New York law related to the swap transaction. Justice Breyer stressed the reasoning behind Howsam -- that the NASD is better equipped to interpret and apply its own internal rule. That is not the case here. Plaintiffs are asking the Court to determine whether the swap agreement profits accruing to GBR were subject to an agreement to arbitrate or were dismissed with prejudice which makes the settlement of the GBR lawsuit against its managing

4

partner Don Rice, filed derivatively by plaintiffs, irrelevant in determining the NASD rule on commencement of arbitration. Both the bar of a judgment on the merits and whether an agreement to arbitrate exists are within the province of the Court and should be the subject of further evidentiary hearings, if necessary in rendering a full decision on the matter. Moreover defendants clearly dismissed the same claims as presented in arbitration voluntarily twice. Whether the Federal Procedural Rules rather than the NASD procedural rules apply to bar the Arbitration is better suited to be ruled on by the federal court. Plaintiffs are not asking this Court to interpret or apply the internal NASD time limit. We are asking that the claim on which the time limit is applied i.e. the settlement of the litigation by GBR, is not the subject of a FINRA arbitration agreement or has be determined on its merits by the dismissal with prejudice against GBR by defendants and that both the bond transaction breach of contract claim and the swap transaction breach of contract claim are barred by FRCP 41d two dismissal rule. Howsam is simply not on point.

      The argument for enjoining the arbitration in this case is essentially that M Securities participation in the State case where plaintiffs appeared but was dismissed for non- prosecution, and filing four suits in this Court, one dismissed for uncertainty and to who the obligee was on each of the claims and failure to state a claim, and another for failure to serve plaintiffs and two of which were dismissed voluntarily, all without prejudice, and all of which acknowledged that the claims arose in 1996 and would be barred following the voluntary dismissal which did not toll the statute, was conduct inconsistent with the future desire to arbitrate its claims. See, e.g., Menorah Ins. Co. v. INX Reinsurance Corp., 72 F.3d 218, 220-21 (1st Cir.1995); 2 I. R. Macneil et al., Federal Arbitration Law @ 21.3.1 (1994). Generally where federal procedural rules bar a subsequent claim such as cases where an arbitration involves forum shopping after choosing or

5

allowing the litigation of its claims before a court rather than an arbitrator, a party has can be barred from exercising a right to arbitrate. See, e.g., Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32-34 (1st Cir. 2001); Navieros Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.3d 304, 316 (1st Cir. 1997) ; Menorah, 72 F.3d at 221-22; Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 807 F.2d 16, 19 (1st Cir. 1986); Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union No. 633, 671 F.2d 38, 42-44 (1st Cir. 1982). Further, in Menorah and Jones Motor Co., the 1st circuit distinguished simple waiver as referred as dicta in Howsam from waiver was due to litigation-related activity, by ruling that litigation related activity was presumptively for the judge and not the arbitrator. See Menorah, 72 F.3d at 222; Jones Motor Co., 671 F.2d at 43. This was in accord with the overwhelming weight of pre-Howsam authority, which held that waiver due to litigation conduct was generally for the court and not for the arbitrator. See generally 2 I. R. Macneil et al., Federal Arbitration Law @ 21.3 (1994).

Few courts have had occasion to consider the impact of Howsam and Green Tree on the doctrine of waiver of arbitration by conduct, and they have disagreed. The Eight Circuit has held, with little discussion, that Howsam and Green Tree indicate that waiver is now presumptively an issue for the arbitrator, and not for the courts, at least where the conduct allegedly constituting waiver is due to litigation in some other court. See Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co., 328 F.3d 462, 466 (8th Cir. 2003   By contrast, a panel of the Fifth Circuit has held that the issue of waiver by conduct is for the court, and not for the arbitrator, in situations where the alleged waiver occurred due to conduct before the district court. See Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am., 97 Fed. Appx. 462,464 (5th Cir. 2004); see also Carbajal v. Household Bank, FSB,, 2003 U.S. Dist. LEXIS 16458, 2003

6

WL 22159473, at *9 (N. D. Ill. Sept. 18, 2003). This was particularly so given the court's comparative expertise. See Tristar, 97 Fed. Appx. at 464.

In a stream of recent cases, the First Circuit has continued to decide waiver questions due to litigation-related activities without discussing the impact of Howsam, most likely because no party raised the issue. See Lomas v. Travelers Prop. Cas. Corp. (In re Citigroup, Inc. Capital Accumulation Plan Litig.), 376 F.3d 23, 26-29 (1st Cir. 2004); Rankin v. Allstate Ins. Co., 336 F.3d 8, 12-14 (1st Cir. 2003); Restoration Pres. Masonry, Inc. v.Grove Europe Ltd., 325 F.3d 54, 60-62 (1st Cir. 2003).

As expressed in the commentary to the RUAA and elsewhere, there are important policy reasons why a court and not an arbitrator should decide waiver issues, at least where the waiver -- as has generally been true in our cases -- is due to litigation-related activity. Where the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration or stay proceedings, then the district court has power to control the course of proceedings before it and to correct abuses of those proceedings. See Jones Motor Co., 671 F.2d at 43; Doctor's Assocs., 66 F.3d at 456 & n.12.

Also, the comparative expertise considerations stressed in Howsam and Green Tree argue for judges to decide this issue. See  Howsam, 537 U.S. at 85 ; Green Tree, 539 U.S. at 452-53. ***Judges are well-trained to recognizeabusive forum shopping. See Tristar, 97 Fed. Appx. at 464; Bell v.Cendant Corp., 293 F.3d 563, 569 (2d. Cir. 2002); Jones Motor Co., 671F.2d at 43. As well, the inquiry heavily implicates "judicial procedures,"which Green Tree suggests should be an important factor in presuming that anissue is for the court. See***

7

*<u>Green Tree, 539 U.S. at 452-53</u> (emphasisadded). Further, the procedural waiver issue is not likely to be intertwined with the merits of the dispute*. (Emphasis Supplied),See <u>RUAA @ 6</u> cmt. 5, 7 U.L.A. 16 (Supp. 2004); see also <u>Wiley, 376 U.S. at 557-58</u>; <u>Prima Paint Corp., 388 U.S. at 403-04</u>.

WHEREFORE, Plaintiffs hereby request an evidentiary hearing on any of the proposed amendments of findings and requested modification of judgment that create factual issues.

        Respectfully submitted,

        Gordon Murray, P.A.
        Local Counsel for Grigsby & Ass.
        550 NE 124th Street
        North Miami, FL 33161
        Telephone: (305) 398-9646
        Facsimile: (305) 398-9651

        E-mail: ffgm@aol.com

        By: **/s/ Gordon Murray, Esq.**
            Gordon Murray, Esq.
            FBN 521906

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CIVIL DIVISION

GRIGSBY & ASSOCIATES, INC., and
CALVIN B. GRIGSBY,

      Plaintiffs,

v.                                        CASE NO.  06-23035-CIV-COOKE

M. SECURITIES INVESTMENT, HOWARD
GARY & COMPANY, HOWARD V. GARY
and the NATIONAL ASSOCIATION OF
SECURITIES DEALERS, INC.,

      Defendants.
_____

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 31, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

                                                        By: /s/Gordon Murray, Esq.

                                                        Gordon Murray, Esq.
                                                        FBN 521906

## SERVICE LIST

**Grigsby & Associates, Inc., and Calvin B. Grigsby v. M Securities, et al.
United States District Court, Southern District of Florida**

Ron J. Lewittes, Esq.
Curtis Carlson
Carlson & Lewittes, P.A.
1200 Suntrust International Center
One Southeast Third Avenue
Miami, FL 33131
Telephone: 305.372.9700
Facsimile: 305.372.8265
E-mail: Carlson@carlson-law.net


Attorney for Plaintiff:

GORDON MURRAY, Esq.